ARLINE TUITE ET AL. *v.* STOP AND SHOP
COMPANIES, INC.
(AC 15117)

Foti, Lavery and Hennessy, Js.

---

Argued January 29—officially released June 3, 1997

*James G. Geanuracos*, with whom was *Robyn L. Sondak*, for the appellant (defendant).

*Sheila A. Huddleston,* with whom, on the brief, were *James W. Bergenn, Scott R. Rothstein* and *Kay K. Tolbert,* for the appellees (plaintiffs).

*Opinion*

LAVERY, J. The defendant appeals from the judgment rendered for the plaintiff after a trial by jury in a case involving a fall in a supermarket. The defendant claims that the trial court improperly (1) failed to instruct the jury that the plaintiff was required to prove that the defendant had actual or constructive notice of the specific defect and also had sufficient time to remedy the defect, (2) limited the defendant's cross-examination of the plaintiff's expert witness, (3) precluded the defendant from questioning the plaintiff about the resolution of a previous action involving the plaintiff, (4) excluded certain documents from a previous action involving the plaintiff, (5) permitted one of the plaintiff's witnesses to render expert testimony as to the plaintiff's economic loss, (6) awarded the plaintiff costs for the testimony of one of its witnesses. We reverse the judgment only as to the bill of costs awarded for the testimony of a real estate appraiser.

The jury could have reasonably found the following facts. On March 13, 1989, the plaintiff Arline Tuite[1] tripped and fell on property owned by Sally Sega and Arthur Sega. The plaintiff commenced an action against the Segas seeking damages for the injuries she sustained, including injuries to her right shoulder. The plaintiff made discovery requests upon the Segas, and also disclosed Steven Schutzer and Bruce Cagenello as her expert witnesses. The plaintiff's action against the Segas was settled prior to trial.

On March 17, 1989, four days after she fell on the Sega property, the plaintiff went to the defendant's

---

[1] Arline Tuite's husband, George Tuite, is also a plaintiff in this case. We refer to Arline Tuite as the plaintiff in this opinion.

Stop & Shop store in West Hartford to purchase carnations. As the plaintiff was leaving the crowded floral department, she started down an aisle that she had previously used. The plaintiff found that the aisle was blocked by one of the store's employees who was holding a watering can and standing next to cart of flowers. The plaintiff then walked down a narrower aisle when she encountered a woman who had bent down to look at some flowers. As she passed the woman, the plaintiff looked down and saw that a small area of the floor was covered by water and petals. The plaintiff slipped on the water and fell, landing on her right hip and right arm, injuring herself.

## I

The defendant first claims that the trial court improperly failed to instruct the jury that the plaintiff was required to prove that the defendant had actual or constructive notice of the specific defect and that the defendant also had sufficient time to remedy the defect. We disagree.

In the present case, the plaintiff claimed that the defendant breached its duty of care when its employees created the dangerous condition that caused her injury. It is well established that a plaintiff does not have to prove that a defendant had actual or constructive notice of a dangerous condition when the plaintiff claims that the defendant's employees created the condition. See *Fuller* v. *First National Supermarkets, Inc.*, 38 Conn. App. 299, 300, 661 A.2d 110 (1995) (holding supermarket caused fall by leaving pricing stickers on floor); *Holody* v. *First National Supermarkets, Inc.*, 18 Conn. App. 553, 554–55, 559 A.2d 723 (1989) (holding supermarket employees caused plaintiff's injury by stacking cartons in dangerous manner); *Zarembski* v. *Three Lakes Park, Inc.*, 177 Conn. 603, 605, 419 A.2d 339 (1979) (holding construction company had actual notice of dangerous

condition that its employees created). In these types of cases, the defendant is deemed to have actual notice of the dangerous condition that its employees created.

In the present case, the trial court's instruction not only comported to the plaintiff's contention that the petals and water on the floor were caused by the defendant's employees, but was also supported by ample evidence. The record reflects that there was a store employee watering plants a few feet from the place of the fall, the aisle was very narrow and crowded, the plants were placed directly on the floor with nothing to prevent water from spilling out of the pots and, after the fall, an employee sharply reprimanded the employee who had been tending to the flowers.

The trial court properly instructed the jury when it stated: "Mrs. Tuite's claims are not based upon the presence of the accumulation of water and petals alone, but upon the dangerous condition created by failing to take the necessary measures to maintain the florist department in a reasonably safe condition by allowing the dangerous condition to occur. This is not a case in which it is claimed that a defective condition existed on the defendant Stop & Shop's floor that was not of its own making." Given the plaintiff's theory of liability and the evidence presented at trial, the trial court's instruction to the jury concerning this issue was proper.

## II

The defendant's second claim is that the trial court improperly precluded the defendant's cross-examination of Schutzer, one of the plaintiff's expert witnesses.

On direct examination, Schutzer testified that it was his opinion that the fall at Stop & Shop was a substantial contributing factor to the permanent partial disability that the plaintiff sustained. On cross-examination, the plaintiff objected to the defendant's attempt to impeach

Schutzer's testimony by referring to a response that he had given during a deposition on June 22, 1994. During that deposition, Schutzer was asked whether he could "attribute" or "divide" the causes of the plaintiff's disability. Schutzer responded to the question by stating: "In this type of a situation it's obviously a subjective call. . . . In this type of thing I split it fifty-fifty and, although it's not mentioned here, I would have said 50 percent attributable to the preexisting condition and 50 percent attributable to acute trauma." The defendant attempted to use Schutzer's answer from the deposition to impeach his testimony at trial when he stated that the fall at Stop & Shop was a substantial contributing factor to the plaintiff's injury. After extensive argument, the trial court ruled that this evidence was not admissible because it was not relevant. We agree.

"[P]roper cross-examination must be relevant to be admissible. *Ayers Co.* v. *Novelty Textile Mills, Inc.*, 168 Conn. 577, 578, 362 A.2d 969 (1975); *Conley* v. *Board of Education*, 143 Conn. 488, 495, 123 A.2d 747 (1956). 'The trial court has broad discretion to determine the relevancy of evidence, and we will not disturb a trial court's ruling on the admissibility of evidence in the absence of a clear abuse of discretion. *State* v. *Holliman*, 214 Conn. 38, 50, 570 A.2d 680 (1990).' *State* v. *Sauris*, 227 Conn. 389, 407, 631 A.2d 289 (1993). This broad discretion extends to the admissibility of expert testimony which the trial court finds is without probative value for the jury. *Going* v. *Pagani*, 172 Conn. 29, 35, 372 A.2d 516 (1976)." *Skrzypiec* v. *Noonan*, 228 Conn. 1, 21–22, 633 A.2d 716 (1993).

Here, the defendant was confusing the issue of a preexisting disability with the issue of a preexisting condition.[2] A plaintiff who has a dormant, asymptomatic

---

[2] Generally, a plaintiff with a preexisting *condition* who is subsequently injured is entitled to full recovery. A plaintiff who suffers from a preexisting *disability* that is made worse by an injury, however, can recover only to

arthritic condition that is subsequently aggravated by an injury caused by the defendant's negligence is entitled to recover full compensation for the resulting disability, even though her resulting disability is greater than if she had not suffered from the arthritic condition. See *Boland* v. *Vanderbilt*, 140 Conn. 520, 524, 102 A.2d 362 (1953); *Mourison* v. *Hansen*, 128 Conn. 62, 64–65, 20 A.2d 84 (1941); 2 Restatement (Second) Torts § 461 (1965).

The evidence adduced at trial falls within the category of a dormant, asymptomatic preexisting condition. The record reveals that the plaintiff was surprised when Schutzer told her, in March, 1989, that she had arthritis because her shoulder had never been a problem. Schutzer testified that neither the plaintiff's prior medical records nor the initial history she gave indicated that she had had any discomfort or disability because of the arthritis. Furthermore, Schutzer testified that many people have asymptomatic arthritis without being aware of it, and that he could not state whether, without the fall, the plaintiff would have ever suffered any disability from the arthritic condition alone.

In sum, the trial court correctly concluded that this type of testimony would have confused the issue concerning the origin of the plaintiff's injury. Furthermore, the only relevant question regarding causation was whether the fall at Stop & Shop was a substantial contributing factor in the plaintiff's permanent partial disability. *Mourison* v. *Hansen*, supra, 128 Conn. 64–65. We, therefore, conclude that the trial court did not abuse its discretion when it did not admit this testimony.

### III

The defendant's third claim is that the trial court improperly limited the cross-examination of the plain-

the extent of the aggravation of the injury. See 2 Restatement (Second), Torts § 433 A, comment e, illustration 8 (1965).

tiff as to the resolution of her previous action against the Segas. On direct examination, the plaintiff was asked if she "proceeded to trial with the complaint from years earlier against the Segas?" The plaintiff responded "No" to this question. After concluding its recross-examination, the defendant made an offer of proof outside the presence of the jury regarding the plaintiff's settlement in the Sega matter. The defendant contended that the plaintiff had "opened the door" to this issue. The defendant also argued that, if evidence of the settlement was not introduced, the jury would be free to infer that the plaintiff had withdrawn the action against the Segas without receiving compensation. The trial court refused to allow this type of questioning because the defendant had chosen not to object to the initial question as to whether she had proceeded to trial. The trial court, however, did deliver an instruction to the jury[3] regarding the evidentiary significance of the Sega complaint and the Sega interrogatory responses that had been admitted into evidence.

Our Supreme Court has held that otherwise inadmissible evidence can be properly introduced when one party has "opened the door" to such evidence in its own case. *Somers* v. *LeVassuer*, 230 Conn. 560, 566, 645 A.2d 993 (1994). The admissibility of this evidence, however, is not an automatic right. "[T]he trial court must consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit [the evidence] . . . to the extent neces-

---

[3] The trial court's instruction on this issue was requested by the defendant and was rendered almost verbatim by the trial court, stating: "[I]n this case you've heard testimony about a complaint brought by Mrs. Tuite for injuries she claimed to have sustained in a falldown on the Sega property. You've also heard testimony about responses made by Mrs. Tuite to interrogatories propounded on her in the Sega lawsuit. These pieces of evidence are evidentiary admissions, not in themselves conclusive, but whose weight is to be determined by you, the jury, in the same way as any other evidence presented."

sary to remove any unfair prejudice which might otherwise have ensued from the original evidence. Such a decision, of course, rests within the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) Id. We conclude that the trial court did not abuse its discretion when it did not permit the defendant to conduct further cross-examination of the plaintiff on the issue of the Sega settlement.

## IV

The defendant's fourth claim is that the trial court improperly excluded certain documents from a previous action involving the plaintiff. The trial court permitted the defendant to introduce into evidence the complaint and several interrogatory responses from the plaintiff's action against the Segas. The trial court, however, did not allow the defendant to introduce a settlement letter[4] from the plaintiff's attorney to the Segas' attorney. The trial court also did not allow the defendant to introduce one interrogatory response and the disclosure of expert witnesses filed by the plaintiff from the action against the Segas.

## A

The trial court correctly concluded that the letter was an inadmissible offer of settlement. "It has long been the law that offers relating to compromise are not admissible on the issue of liability. *Nearing* v. *Bridgeport*, 137 Conn. 205, 209, 75 A.2d 505 (1950); *Stranahan* v. *East Haddam*, 11 Conn. 507, 512–19 (1836); [C.] McCormick, Evidence (2d Ed. [1972]) § 274. So, too, it has long been established that an admission of fact made during negotiations, where the statement was intended to state a fact, is competent evidence. *Evans*

---

[4] The plaintiff's letter to the Segas' attorney stated in part: "Any statements in this letter are for settlement purposes only, are not and should not be construed as admissions and are without prejudice to any positions which may be taken in further proceedings."

*Products Co.* v. *Clinton Building Supply, Inc.,* 174
Conn. 512, 518, 391 A.2d 157 (1978); *Hartford Bridge
Co.* v. *Granger,* 4 Conn. 142, 148 (1822). . . . 'Where
it is not clear whether the statement is an offer of
compromise or an admission of liability [or other fact]
and the motive of the declarant is subject to speculation
and conjecture, the statement must be excluded.' [C.]
Tait & [J.] LaPlante, Handbook of Conn. Evidence
(1976) § 11.5 (d) (2), p. 189." *Simone Corp.* v. *Connecti-
cut Light & Power Co.,* 187 Conn. 487, 490, 446 A.2d
1071 (1982). Given the language used by the plaintiff's
counsel in the letter, the trial court correctly ruled that
the letter was intended for settlement purposes and
was not an admission of fact and, therefore, was inad-
missible.

B

The trial court allowed the defendant to introduce
all but one of the plaintiff's interrogatory responses that
were given in the action against the Segas. The excluded
response and its related attachments listed the special
damages that the plaintiff had alleged in that case.[5]
The defendant attempted to introduce this interrogatory
response as an admission that the plaintiff's injuries
were caused by the earlier fall on the Sega property.
At trial, the plaintiff testified that she never saw the
interrogatory response. The plaintiff also objected to
the admissibility of the response because it was not
inconsistent with any other prior statements and the
responses were not judicial admissions.

We disagree with the trial court's exclusion of the
response to the interrogatory because it was relevant
and inconsistent with the plaintiff's position at trial.

---

[5] The excluded interrogatory stated: "Please list each item of special dam-
age, loss and expense which you claim resulted from the alleged accident
. . . ." The plaintiff responded to this request with a seven page chart
detailing the date, the amount, and source of each expense that she incurred.

"The general rule is that admissions, if relevant and material, made by an attorney incidental to the general authority of the attorney to represent his client in connection with and for the purpose of controlling the matter committed to him, are admissible against the client. *Lickteig* v. *Buckholz*, 129 Conn. 399, 401, 402, 28 A.2d 871; 31A C.J.S. 869, Evidence, § 361; 7 Am. Jur. 2d 123, Attorneys at Law, § 122." *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 496, 234 A.2d 825 (1967).

While the trial court should have admitted the interrogatory response, the error was harmless. "We have often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result. . . . Any testimony in a case that tends of itself or in connection with other testimony to influence the result on a fact in issue is material. If the testimony would tend to affect the verdict of the jury, it meets the test of materiality. . . . The determination of that question lies in the record. . . . It is well established that if erroneously admitted evidence is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error." (Citations omitted; internal quotation marks omitted.) *Swenson* v. *Sawoska*, 215 Conn. 148, 153–55, 575 A.2d 206 (1990).

In the present case, the exclusion of one of the plaintiff's interrogatory responses was not material. In addition, the jury had before it a significant amount of evidence regarding the fall on the Sega property and the plaintiff's resulting injuries. The evidence surrounding the plaintiff's previous action against the Segas included the complaint, several of the plaintiff's interrogatory responses, testimony from the plaintiff's experts and testimony from the plaintiff herself con-

cerning the previous lawsuit. We conclude that any further evidence on this issue would have been cumulative. Our review of the record reveals that the defendant has failed to sustain its burden of showing that the error was harmful.

### C

The defendant also contends that the trial court improperly excluded the plaintiff's disclosure of her expert witnesses filed in the action against the Segas. In the documents that were not admitted, the plaintiff disclosed Schutzer and Cagenello as her expert witnesses. The defendant argues that these disclosures should have been admitted as further evidence that the plaintiff had claimed the same injuries and damages in both the Sega action and the Stop & Shop action. It is also the defendant's contention that the plaintiff's disclosure of its expert witnesses was an admission by a party because it is a prior inconsistent statement. We agree with the defendant.

We disagree with the trial court's reasoning that by filing these disclosures the plaintiff was only complying with procedural rules in order to preserve her right to call these witnesses at trial. They were admissions. See *Collens* v. *New Canaan Water Co.*, supra, 155 Conn. 496.

The disclosure of Schutzer as an expert witnesses should be construed as an admission because the expert disclosures were offered as a prior pleading by the plaintiff in which she represented that the trauma from the earlier fall was a contributing factor to the plaintiff's injury. Furthermore, the disclosure of Cagenello as an expert witness should also be construed as an admission because it was the plaintiff's intent to have him testify that it was the fall on the Segas' property that caused the impairment of her earning capacity.

Nevertheless, given the amount of aforementioned evidence adduced at trial, the admission of the plain-

tiff's previous disclosure of expert witnesses would have constituted only further cumulative evidence before the jury of the fact that the plaintiff had a previous action against the Segas for a fall that resulted in an injury to her shoulder. Furthermore, both of these witnesses were subject to extensive direct and cross-examination at trial. Applying the same harmless error analysis from the excluded interrogatory response, we conclude that the defendant has failed to sustain its burden of showing that the exclusion of the plaintiff's disclosure of its expert witnesses was harmful.

## V

The defendant's fifth claim is that the trial court improperly admitted the testimony of Cagenello, who offered his expert opinion on the effect of the plaintiff's injury on her income and earning capacity. The defendant claimed that the trial court should not have allowed Cagenello to render his expert opinion because no foundation was laid for it.

Cagenello had been a real estate broker for twenty-five years, held all relevant professional licenses, served as a member of the state's real estate commission and had hired, trained, and supervised real estate agents for over fifteen years. He had also undertaken an extensive study of the earning performance of 700 sales associates. Cagenello had reviewed hundreds of pages of the plaintiff's testimony taken from the depositions from both the Sega case and the present case. Cagenello had also known the plaintiff on a professional basis and was familiar with her previous earning record.

Cagenello testified that the plaintiff was one of her company's "top producers." Cagenello also testified that in his expert opinion the plaintiff's injury had caused her earning capacity to decrease 65 to 70 percent during her first two years subsequent to her injury, 50 percent in the third year and 20 percent in subsequent

years. Cagenello also rendered his opinion on the amount of income the plaintiff had lost and would continue to lose until she retired.

"The trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the error is clear and involves a misconception of the law, its ruling will not be disturbed. . . . In order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion. . . . Some facts must be shown as the foundation for an expert's opinion, but there is no rule of law declaring the precise facts which must be proved before such an opinion may be received in evidence." (Citation omitted; internal quotation marks omitted.) *Madison Hills Ltd. Partnership II* v. *Madison Hills, Inc.*, 35 Conn. App. 81, 93, 644 A.2d 363, cert. denied, 231 Conn. 913, 648 A.2d 153 (1994).

In the present case, the trial court did not abuse its discretion when it permitted Cagenello to render his expert opinion on the plaintiff's economic loss. The witness was an expert in the field of real estate and his testimony was founded on his extensive knowledge and experience.

## VI

The defendant's sixth claim is that the trial court improperly awarded the plaintiffs $1500 in costs for the testimony of their expert witness Cagenello. The plaintiffs filed a bill of costs seeking to recover $1000 for preparation and $500 for the testimony time of Cagenello. The plaintiffs sought to recover these costs pursuant to General Statutes § 52-260 (f).[6]

---

[6] General Statutes 52-260 (f) provides: "When any practitioner of the healing arts as defined in section 20-1, dentist, registered nurse or licensed practical nurse, as defined in section 20-87a, or real estate appraiser is summoned to give expert testimony in any action or proceeding, the court shall determine a reasonable fee to be paid to the practitioner of the healing arts, dentist, registered nurse or licensed practical nurse, as defined in

There is no dispute that Cagenello is a licensed real estate appraiser. The defendant, however, argues that this statute should apply only when the real estate appraiser testifies as to the value of real property and not, as in this case, to the value of the earning capacity and lost wages of a real estate agent. This court recently held that " '[c]osts are the creature of statute . . . and, unless the statute clearly provides for them the courts cannot tax them.' " *Lurie & Associates, Inc.* v. *Tomik Corp.*, 37 Conn. App. 865, 866–67, 658 A.2d 146 (1995). In the present case, Cagenello was not testifying in his capacity as a real estate appraiser, as set forth in § 52-260 (f). This statute explicitly sets forth by occupation expert witnesses entitled to receive costs, and while Cagenello is a real estate appraiser his testimony did not concern the valuation of real property. Therefore, we reverse the ruling of the trial court granting $1500 to the plaintiffs for Cagenello's expert testimony.

The judgment is reversed only as to the $1500 award of costs related to Cagenello and the case is remanded with direction to render judgment as on file except as modified to eliminate that award.

In this opinion the other judges concurred.

section 20-87a, or real estate appraiser and taxed as part of the costs in lieu of all other witness fees payable to the practitioner of the healing arts, dentist, registered nurse or licensed practical nurse, as defined in section 20-87a, or real estate appraiser."